**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| ALFREDO GONZALEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| REYNALDO GUEVARA, JOANN | ) |
| HALVORSEN as PERSONAL | ) Case No. 22-cv-06496 |
| REPRESENTATIVE of the ESTATE OF | ) |
| ERNEST HALVORSEN, EDWARD | ) Hon. Judge John F. Kness |
| MINGEY, STEVEN GAWRYS, LEE | ) |
| EPPLEN, FERNANDO MONTILLA, | ) Hon. Judge Heather K. McShain |
| ROLAND PAULNITSKY, RICHARD | ) |
| SCHAK, ROBERT SMITKA, JENNIFER | ) |
| BOROWITZ, FRANK DiFRANCO, JOHN | ) |
| PERKAUS, the CITY OF CHICAGO, and | ) |
| COOK COUNTY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MOTION TO QUASH DEFENDANTS'
SUPPLEMENTAL SUBPOENA SEEKING PLAINTIFF'S RECORDED CALLS**

Plaintiff, ALFREDO GONZALEZ, by his attorneys, Loevy & Loevy, respectfully moves pursuant to Federal Rules of Civil Procedure 26 and 45 to quash the subpoena issued by Defendants to the Illinois Department of Corrections for Plaintiffs' recorded telephone calls. In support of his motion, Plaintiff states as follows:

**INTRODUCTION**

The parties have been through this once before. In April of 2023, Defendants subpoenaed the Illinois Department of Corrections ("IDOC") for hundreds of Plaintiff Alfredo Gonzalez's calls based on Plaintiff's testimony that he had spoken with friends and family about his innocence and one of the defendants in this case—Detective Guevara. The Court granted that

subpoena, finding that it was reasonably targeted to adduce relevant information. Now, having turned up no recordings that are relevant to their claims or defenses, Defendants are pushing for a second round of calls, this time on an order of magnitude larger. On March 5, 2024, Defendants issued a new subpoena to IDOC seeking more than 3,000 more of Plaintiff's recorded phone calls to his friends and family.

Defendants' ongoing efforts to gain access to Plaintiff's IDOC phone calls in this case is nothing more than a fishing expedition. Despite their many suggestions to the contrary, Defendants' first subpoena bore no exotic fruit—the calls reveal nothing more than what Plaintiff himself had stated—he is innocent and angry at the man that framed him, notorious Chicago Detective Reynaldo Guevara. Over Plaintiff's objection, earlier in discovery in this matter, Defendants obtained audio recordings of over 80 of Plaintiff's telephone calls while he was incarcerated in IDOC. Obtaining these phone calls has proved utterly fruitless: Defendants have not presented any evidence from them suggesting there was any subject or person on any of the recordings that was relevant to their case.[1] Instead, Defendants obtained this massive trove of highly personal information in the hope that—somewhere in the thousands of hours of calls between Plaintiff and his most intimate connections: the mother of his children, his children and grandchildren, interspersed among conversations about home cooking, birthday celebrations, his daughter's nail appointments, football games, his ailing mother, and other family drama—they might catch a fish—some recorded call in which Plaintiff might implicate himself in the crime.

The production of the massive trove of calls immediately imposed an extraordinary burden and expense on Plaintiff. In addition to placing all the intimate details of Plaintiff's life

---

[1] Defendants will likely quarrel with this characterization and go to great extremes to extrapolate relevance that is just not there.

and the lives of his family and friends in the hands of Defendants and their lawyers, it put Plaintiff in the position of having to expend an enormous amount of time and money to review countless hours of calls. After coming up empty, Defendants came back for more calls—this time seeking more than 3,000 additional IDOC calls.

The calls Defendants already have are—predictably—utterly irrelevant and painfully personal. Of the hundreds of calls, constituting countless hours of recordings, so far Plaintiff's counsel is not aware of a single call in which Plaintiff implicates himself in shooting of the victims, Torrence and Kevin Wiley, nor any other revelation relevant to the case other than Plaintiff's ceaseless efforts to prove his innocence and be freed from the horrors of prison.

It is well established that a subpoena should be quashed if it poses an undue burden to a party. A party bears an undue burden, in turn, where the breadth and burden of the request outweighs the opposing party's relevance and need for the discovery. Plaintiff bears such a burden here. The subpoena would improperly invade Plaintiff's privacy interest, as it would allow Defendants access to thousands of hours of Plaintiff's most intimate conversations with his loved ones. Moreover, the cost of reviewing and cataloguing such calls, particularly on a tight discovery deadline, would be staggering for both parties. On the other side of the ledger, Defendants have failed to show that any of the dozens of calls they have already received relate to their claims or defenses in this case. It follows that thousands of more hours of the same is unlikely to yield any relevant information. Plaintiffs therefore respectfully move for this Court to quash Defendants' supplemental subpoena.

## BACKGROUND

On April 5, 2023, in this case, Defendants subpoenaed the IDOC for "any and all recordings of jail calls for Alfredo Gonzalez, Inmate No. B32725, [DOB], from March 1992-

May 1992, August 1995-October 1995, May 2003, May 2006, December 2008-March 2013, October 2013, October 2016, June 2017, November 2017-February 2018, August 2022," totaling 305 recorded calls to and from Plaintiff. Ex. A.[2] Plaintiff moved to quash the subpoena on the basis of its intrusion into Plaintiff's privacy, irrelevance to the case, and over-breadth. Dkt. 99. While recognizing that Plaintiff had standing to challenge the subpoena, this Court denied Plaintiff's motion. Dkt. 140. The Court found that the subpoena was reasonably targeted at conversations likely to contain relevant information, given that they sought the calls of family and friends regarding conversations about Plaintiff's innocence and Defendant Guevara. Crucially, the Court noted Defendants' contention that the calls they sought took place in the months near significant events in Plaintiff's and his co-defendant's underlying criminal cases. *Id.* at 11.

On February 5, 2024—less than a month before discovery was set to close—Defendants informed Plaintiff of their intent to issue a supplemental subpoena to IDOC for 3,077 additional calls.[3] In addition to more phone calls between Plaintiff and his family members, Defendants are seeking calls between Plaintiff and his attorney and two prior plaintiffs that his counsel has represented—Jacques Rivera and Matt Sopran. And while Defendants acknowledged that they had previously followed the construct of seeking calls near the time of significant events in Plaintiff's and his co-defendant's post-conviction cases, they have since abandoned it. Defendants took the perplexing position that while they previously limited the phone calls to a relevant timeframe to avoid a fishing expedition, they only did so with the understanding that

---

[2] While Defendants' subpoena encompassed 305 calls, they received 84 calls due to IDOC's ten-year retention policy.
[3] Specifically, Defendants are seeking 58 phone calls with Jacques Rivera, 2 calls with Matt Sopron, 2 calls with Sean Starr, 1 recorded call with Melissa Segura, 1,045 recorded calls with Maria Perez, 326 calls with Alfredo Gonzalez, Jr., 1,312 recorded calls with Maria Gonzalez, and 174 recorded calls with Anita Lozada.

they would find relevant phone calls in that timeframe to justify seeking more calls outside of it. Essentially, Defendants concede that their new subpoena is indeed a fishing expedition.

Plaintiffs objected because the calls are irrelevant, intrusive of Plaintiff's privacy, overbroad, unduly burdensome, and implicate attorney-client privilege. Additionally, Defendants' failure to fulsomely respond to Plaintiff's interrogatories and Requests to Admit regarding the relevance of the calls Defendants have already received confirm what Plaintiff has urged from the outset: these subpoenas are nothing more than Defendants' attempt to throw darts in the dark and see what sticks. Plaintiff intends to move to compel Defendants' answers to these discovery requests. Their failure to answer these requests concerning less than 100 calls portends the protracted course of this litigation, as they have provided Plaintiff no reason to believe they will answer future discovery requests regarding thousands of calls.

During the parties' meet-and-confer, Defendants agreed to narrow the timeframe for calls from 2014-2022 to 2014-2020. However, they did not explain why this timeframe is relevant to their defenses in this case, other than the fact that it is narrower than the original timeframe proposed. Plaintiffs rejected Defendants' proposal.

On March 5, Defendants issued a subpoena to IDOC for any and all recordings of telephone calls made by Alfredo Gonzalez to Jacques Rivera, Matt Sopron, Sean Starr, Melissa Segura,[4] and Anita Lozada, without a time limitation. Defendants' subpoena also requested all recordings made by Plaintiff, between 2014-2020, to Alfredo Gonzalez Jr., Maria Gonzalez, and Maria Perez—Plaintiff's family members. Plaintiffs informed Defendants that they would move to quash. This motion follows.

---

[4] Based on communications with Ms. Segura, it is Plaintiff's counsel's understanding that she objects to the subpoena and is in communication with her counsel about whether to also to move to quash the subpoena seeking her calls as well.

**ARGUMENT**

While the Federal Rules permit broad discovery, it is not without limits: "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In that regard, production pursuant to a subpoena resembles that of discovery for a non-privileged matter—it must be "relevant to any party's claim or defense and proportional to the needs of the case." *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 19-cv-50122, 2021 WL 5283946, at *2 (N.D. Ill. Aug. 10, 2021). *See also DeLeon-Reyes v. Guevara*, 2020 WL 3050230, at *3 (N.D. Ill. 2020) ("[T]he relevance and proportionality limits in Rule 26 . . . apply with equal force to nonparty discovery under Rule 45" and district courts must limit subpoenas that exceed discovery's "proportional and proper bounds[.]").

Rule 45(d)(3)(A)(iii-iv) provides that "the court for the district where compliance is required must quash or modify the subpoena that . . . [1] requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . [2] subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii-iv). For the purpose of this rule, a subpoena may subject a person to an "undue burden" if his privacy interests are implicated by the subpoena. *Jump v. Montgomery Cty.*, No. 13-3084, 2015 WL 6558851 (C.D. Ill. Oct. 29, 2015) (subpoena to a phone company for a customer's phone records posed an undue burden to the customer). In evaluating whether a subpoena poses an undue burden, the court will consider factors including "the relevance of the discovery sought, the subpoaening party's need for the documents, the breadth of the request and the burden imposed on the subpoaened party." *Parker v. Four Seasons Hotel, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (internal quotations and citation omitted).

Defendants have failed to show the relevance of the discovery sought or a substantial need for these recordings, particularly one that would outweigh the substantial burden on

Plaintiff's privacy interest and the cost that such a subpoena would impose. This supplemental subpoena appears to be little more than a continuation of the fishing expedition that Defendants began almost a year ago. This Court should therefore quash Defendants' subpoena.

**I.      Plaintiff has standing to challenge this subpoena.**

As this Court recognized in ruling on Plaintiff's previous motion to quash Defendants' subpoena for the IDOC call recordings, Plaintiff has standing to object to this subpoena. A party has standing to quash a subpoena directed to a non-party if it implicates the party's privacy interests. *Simon v. Northwestern Univ.*, No. 1:15-cv-1433, 2017 WL 66818, at *2 (N.D. Ill. Jan. 6, 2017). This Court found that Plaintiff had the "minimal privacy interest necessary to challenge the subpoena," given that phone calls were his only means of maintaining his relationships with friends and family during his more than thirty years of incarceration. *See* Dkt. 140 (quoting *id.*). That reasoning applies for the same reasons here, as Defendants are seeking thousands more of Plaintiff's prison phone calls over which he maintains a privacy interest.

**II.     Defendants' subpoena for Plaintiff's phone calls improperly intrudes on his privacy interest.**

With standing established, the court will weigh "the privacy interests of the person seeking to quash the subpoena against the relevance and the benefit of the information sought." *Rodriguez v. City of Chicago*, No. 18-cv-7951, 2021 WL 2206164, at *1 (N.D. Ill. June 1, 2021). Plaintiff retains a privacy interest in the recorded calls with his family members, friends, and attorney. Defendants' subpoena unduly invades that interest to a greater extent than the first subpoena, as it demands the production of approximately ten times more phone calls—the majority between Plaintiff and his family members.

Courts in this district have routinely recognized that in civil matters, prisoners have a privacy interest even when they share information on a recorded line. *See Pursley v. City of*

*Rockford*, No. 18-cv-50040, 2020 WL 1433827, at *2 (N.D. Ill. Mar. 24, 2020) ("While inmates would reasonably expect that their phone calls could be accessed by prison officials, they would not reasonably expect that the details of their recorded phone calls would be handed over to civil litigants."); *see also Bishop v. White*, No. 16-cv-6040, 2020 WL 6149567, at *3 (N.D. Ill. Oct. 20, 2020); *Simon*, 2017 WL 66818, at *2 ("This court doubts, for example, Simon anticipated his remarks to a friend about the weather, slights uttered in a heated lover's quarrel, or any unrelated conversation ranging from the most benign topics (the former) to the most intimate (the later) would find its way as an exhibit in this lawsuit.").

Defendants' contention that they have narrowed this supplemental subpoena to eight callers to avoid invading Plaintiff's privacy interest fails to persuade, in light of the callers' identities and the number of calls sought. Indeed, Plaintiff's calls with his friends and family comprise all but four of the 3,077 calls identified. These phone calls were Plaintiff's primary means of maintaining connection with his loved ones over his 30+ years in prison. They contain Plaintiff's most private, intimate, and vulnerable thoughts, and experiences. Despite Defendants paying no heed whatsoever to his privacy, it bears mentioning that Plaintiff was wrongfully convicted of a crime he did not commit and torn away from his young family for three long decades. Plaintiff's primary means of maintaining any semblance of a relationship with that family was by prison phone call—something the calls Defendants currently possess makes abundantly clear. Allowing the production of 3,000 of his recorded calls would constitute an undue burden to Plaintiff, providing Defendants virtually unfettered access to Plaintiff's innermost thoughts and feelings over those three decades.

**III.     Defendants have not demonstrated the relevance of the recorded calls they seek.**

Defendants have not justified the relevance of the more than 3,000 calls sought. *See Parker*, 291 F.R.D. at 188. Rather, Defendants have relied on the identities of the callers to substantiate their request. That is belied by Defendants' failure to respond to Plaintiff's discovery requests, in which Defendants were asked to identify all relevant calls produced from the first subpoena. Defendants have thus failed to meet their burden of demonstrating how this overbroad subpoena will adduce any relevant evidence.

At the outset, Defendants fail to support their claim that the callers' identities necessarily suggests their relevance. In their correspondence, Defendants noted that many of these callers were listed on Plaintiff's Rule 26(a)(1) disclosures. Yet, in this supplemental subpoena, only four of the eight callers—Plaintiff's family members—were disclosed in his Rule 26(a)(1) disclosures. Defendants have already received recorded calls between Plaintiff and these family members—the mother of his children, his two children, and his niece who Plaintiff raised. These recorded calls concern Plaintiff's excitement about being released after his wrongful incarceration and intimate conversations in which he catches up with his family about their daily lives. The calls document just how much Plaintiff tried to use the phone to stay in touch with his family—to wit, several calls demonstrate that Plaintiff routinely called his family members on their birthdays; while other calls document how Plaintiff's young granddaughter would call him to read him poems and sing him songs to keep his spirits up. It is likely that thousands more of these calls will only yield more of the same. Two of the callers—Jacques Rivera and Matt Sopran—have no connection to this litigation whatsoever. Defendants' request for two of Plaintiff's calls with his attorney, Sean Starr, improperly invades attorney-client privilege. Plaintiff's situation differs from that in *Simon*, where the court held that the plaintiff had no

reasonable expectation of confidentiality in calls with his attorney over a recorded line where he did not present any "impediment" to completing those calls over an unrecorded line. 2017 WL 66818, at *5. But Plaintiff faced such an impediment here. These two calls took place in April 2020, when scheduled legal calls were virtually impossible to conduct during the outbreak of the Covid-19 pandemic. Accordingly, Plaintiff had significant difficulty accessing any unrecorded line and reasonably expected that his communications with his attorney would remain private.

Moreover, unlike the first subpoena in which Defendants sought calls near relevant time periods in Plaintiff's and his co-defendants' underlying criminal cases, this subpoena is not narrowly tailored to any relevant timeframe. *See Rodriguez*, 2021 WL 2206164, at *3 ("the criteria for a permissible subpoena in this district require that it be narrowly tailored").

Additionally, Plaintiff's relationships with these individuals and his past testimony regarding their conversations does not in itself demonstrate that these recordings are relevant. In *McClendon v. City of Chicago*, the court found that Plaintiff's testimony that his initial calls to two family members and a friend stating that he had been framed did not warrant the production of those five calls. No. 22-cv-5472, 2024 WL 260234, at *3 (N.D. Ill. Jan 19, 2024). The court reasoned, "Defendants have not offered any specific reasons these calls may be relevant, only the general argument that because Plaintiff admits he told the three individuals about his arrest, he may have given them details about the underlying circumstances." *Id.* So too, here. Defendants have maintained only that these calls are relevant to Plaintiff's damages. That alone, without a more specific reason as to what these calls would engender, cannot outweigh Plaintiff's privacy interest in the more than 3,000 calls at issue.

Defendants' primary argument that they are entitled to additional calls hinges on the 84 calls they have already received and reviewed. In their correspondence, Defendants assert that

Plaintiff discussed his criminal case, Detective Guevara, his post-conviction proceedings, and his intention to file this civil case in these phone calls. All that may be true and still, Defendants have not explained how any of this is relevant to their claims or defenses in this case, as is their burden. *See McClendon*, 2024 WL 260234, at \*3. Defendants' failure to fulsomely respond to Plaintiff's discovery requests—asking that they identify any of the 84 calls that are relevant to the critical contested issues of liability—confirms as much. Indeed, in response to Plaintiff's Requests to Admit, Defendants admitted that Plaintiff did not provide any information that would cast doubt on his theory of the case in the phone calls received. *See* Ex. B (Def. Officers' Second Amended Response to Pl.'s Second Set of Requests to Admit).[5] And in response to Plaintiff's interrogatories asking Defendants to identify any recorded calls they intend to rely on in this litigation or supports any of their claims or defenses, Defendant Officers simply cited all of the calls received. *See* Group Ex. C (Def. Officers' Answers to Pl.'s Third Set of Interrogatories).

Defendants cannot have it both ways. Either the calls they have already received have provided information relevant to their claims or defenses and justify an additional production of 3,000 calls, or have not. Their lack of response to Plaintiff's Interrogatories strongly suggests the latter. Hoping that if they scour enough calls, something will eventually turn up is the exact type of "dart throwing" in the dark that courts in this district have prohibited, *Pursley v. City of Rockford*, No. 18-cv-50040, 2020 WL 1438827, at \*4 (N.D. Ill. Mar. 24, 2020), and that this Court should reject as well.

---

[5] These Requests asked Defendants to admit that in the phone calls received, Plaintiff did not admit to shooting the victim, being present at the shooting, obtaining a gun the night of the shooting, being at his co-defendant's house the night of the shooting, among other key facts that would undermine Plaintiff's innocence. Plaintiffs still take issue with Defendants' responses because they placed the key language in quotation marks, rather than responding fully to the request.

**IV.    Defendants' subpoena would pose an undue financial and time burden on the parties to this litigation.**

In their first motion to quash, Plaintiffs argued that Defendants' subpoena calling for approximately 300 calls would impose a massive cost on the parties in reviewing and cataloguing the recordings, a burden that this Court recognized as more than minimal. Dkt. 140 at 11. But that cost is eclipsed by the supplemental subpoena, which seeks ten times more recordings. Conservatively estimating that each of phone calls is 30 minutes long, reviewing 3,000 of them would amount to approximately 1,500 hours. This would completely occupy a full-time associate for almost a year. The contract attorney cost to review all the calls is over $50,000. Such an enormous cost for both parties outweighs any perceived benefit to Defendants, as discussed above.

Additionally, the parties have been working to fast-track discovery in this case and have relied on discovery conducted in the case of *Maysonet v. Guevara, et al.*, No. 18-cv-2342 (N.D. Ill.), which concerns the same subject matter, to do so. The Court recently extended the discovery deadline in this case to May 31, 2024, *see* Dkt. 156, and noted the large amount of discovery left to complete. Plaintiff is eager to comply with that deadline and find resolution after three decades of wrongful incarceration. Defendants' subpoena, however, jeopardizes that deadline—it will be virtually impossible to review all the calls sought in the next two months. Granting the subpoena would thus pose an undue delay to Plaintiff.

On balance, Plaintiff's privacy interest in the more than 3,000 calls requested and the burden this subpoena will impose far outweighs their perceived relevance. *Rodriguez*, 2021 WL 2206164, at *1. This Court should accordingly quash Defendants' subpoena in its entirety.

\*      \*      \*

Given the foregoing reasons, the Court should quash Defendants' unduly burdensome subpoena for more than 3,000 of Plaintiff's recorded calls.

**RESPECTFULLY SUBMITTED**,

/s/ Annie Prossnitz
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steven Art
Sean Starr
Annie Prossnitz
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
prossnitz@loevy.com

## **CERTIFICATE OF SERVICE**

I, Annie Prossnitz, an attorney, hereby certify that on March 22, 2024, the foregoing motion was electronically filed, which effected service on all counsel of record.

/s/ Annie Prossnitz
*One of Plaintiff's Attorneys*

14

## ATTORNEY CERTIFICATION

I, Annie Prossnitz, an attorney, hereby certify that on February 23, 2024 and on March 6, 2024, the parties met via videoconferencing to discuss, among other discovery matters, Defendants' subpoena to IDOC for Plaintiff's recorded phone calls. During the first meet-and-confer, Plaintiff objected to Defendants' subpoena and stated that he would consider a more narrowly tailored subpoena. During the second meet-and-confer, Plaintiff maintained his objection to Defendants' revised subpoena, which eliminated the request for phone calls from 2020-2022. The parties agreed that they were at impasse and Plaintiff informed Defendants of his intention to file a motion to quash.

/s/ Annie Prossnitz
*One of Plaintiff's Attorneys*

15