IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALFREDO GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 CV 06496 |
| | ) | |
| v. | ) | Hon. Judge John F. Kness |
| | ) | |
| REYNALDO GUEVARA, et al. | ) | Hon. Magistrate Judge Heather K. McShain |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION TO QUASH THEIR SUPPLEMENTAL IDOC SUBPOENA**

Defendants Richard Schak, Edward Mingey, Steven Gawrys, Lee Epplen, Fernando Montilla, and Roland Paulnitsky, ("Defendants"), by their attorneys, respond to Plaintiff Alfredo Gonzalez's, ("Gonzalez"), Motion to Quash Defendants' Supplemental Subpoena, seeking his Illinois Department of Corrections ("IDOC") recorded communications (Dkt. 157) and state:

**INTRODUCTION**

This Court has already denied a similar motion to quash Defendants' prior subpoena to IDOC and the outcome should be no different here. Gonzalez's motion recycles arguments he previously made without tethering those arguments to the record or the law. Defendants' Supplemental IDOC subpoena at issue seeks 1,738 calls between Gonzalez and 8 witnesses, a far cry from the 3,077 calls comprising "thousands of hours" Gonzalez claims in his motion. (Mtn., Dkt. 157, at 2, 3).[1] Gonzalez seeks to quash this supplemental subpoena and put the lid on this relevant and proportional discovery claiming it unreasonably invades his privacy interest and is

---

[1] Defendants explained their belief that an additional 3,077 calls were relevant (*see* Ex. 1, Defs. 37.2 Letter), but ultimately attempted to compromise and only sought about half as many calls—1,738. (*See* Ex. 2, 3/7/24 Email).

irrelevant and unduly burdensome. Gonzalez's arguments (again) lack merit and following this Court's prior reasoning, Gonzalez's motion to quash once more should be denied.[2]

Gonzalez has accused Defendants of serious misconduct in the criminal investigation of the Wiley brothers' murders resulting in hotly disputed allegations that he was wrongfully convicted. Justino "Tino" Cruz –Gonzalez's nephew and co-defendant in his criminal case– testified against Gonzalez identifying him as the individual who fatally shot Kevin and Torrence Wiley in the early morning hours on May 25, 1990. In an IDOC call from November 25, 2017, Gonzalez discusses–among other relevant topics–his understanding that "even Tino was supposed to change his story." (*See* Ex. 4, IDOC Call Trans. JGS_Gonzalez 1472-1517, at 15:4-6). This is just one of the 62 (out of 84 received)[3] recorded IDOC calls that Defendants identified on February 27, 2024, as relevant to this litigation. (*See* Ex. 5, 2/27/24 Email & IDOC Call List). During those 62 calls, Gonzalez discusses Defendant Reynaldo Guevara, key witnesses who testified against Gonzalez– including Tino and Rosa Bello–his purported innocence, the events surrounding May 24 and 25, 1990, and his claimed damages.

Despite identifying these relevant calls that address topics at the heart of Gonzalez's Complaint, Gonzalez's motion to quash makes no mention of them. Gonzalez certainly does not dispute that *these* calls are, in fact, relevant. How could he? Despite the obvious importance to this case, Gonzalez argues this Court should shut down further inquiry by arguing "irrelevance"

---

[2] Gonzalez's motion fails to address the subpoena's request for Gonzalez's written communications. (*See gen.* Mtn., Dkt. 157; *see also* Ex. 3, Defs. Supp. IDOC Subpoena). Any objections to these written communications are therefore waived. *See Edlin v. Garner Family Enterprises, Inc*., 2012 WL 364088, * (S.D. Ind. Feb. 1, 2012) ("Although Rule 45 does not specifically state that parties must file motions to quash within the same limits given to non-parties to serve objections, the Court sees no reasons to provide for a longer time period . . .").

[3] Due to IDOC's retention policy of 10 years, Defendants only received 84 phone calls in response to their previous subpoena.

in the abstract and making the unfathomable argument that Defendants have "turned up no recordings that are relevant to their claims or defenses." (Mtn., Dkt. 157, at 2). But Gonzalez's precarious relevance definition defies Fed. R. Civ. P. 26(b) and common sense.

The fact of the matter is Gonzalez's motion is riddled with inaccuracies and misrepresentations that attempt to mask his unsupported objections and squelch further inquiry into his recorded statements that shed light on his claims in this case. After chipping away at these inaccuracies and misrepresentations it becomes obvious that the recorded communications sought are entirely relevant to this litigation, and Gonzalez's Motion to Quash should be denied.

## BACKGROUND

**1. Defendants' May 2023 IDOC Subpoena Yielded 74% Relevant Calls.**

On April 4, 2023, Defendants served Gonzalez with a notice of subpoena for a portion of his IDOC recorded calls.[4] Gonzalez objected, and Defendants tried to compromise by narrowing the subpoena to obtain calls with specific witnesses. On May 25, when it was clear the parties could not reach a compromise, Defendants issued their subpoena and Gonzalez moved to quash, alleging that it unjustifiably infringed on his privacy rights. (*See gen.* Mtn. to Quash, Dkt. 99).

On November 15, 2023, this Court denied Gonzalez's motion finding first that his asserted privacy interests in his IDOC calls, though *minimal*, were sufficient to confer standing on him to challenge the subpoena. (Dkt. 140, at 10). Nonetheless this Court found that Defendants' subpoena seeking calls surrounding significant events in Gonzalez's and Maysonet's criminal trial and post-conviction proceedings was reasonably targeted at conversations likely to contain relevant information, and while "defendants cannot establish with

---

[4] Gonzalez made over 12,000 phone calls during his time at IDOC – the log of his calls is 49 pages long. Defendants originally subpoenaed all calls surrounding significant dates of his and his co-defendant's, Jose "Juan" Maysonet's criminal trials and post-conviction proceedings.

3

certainty which of these calls, if any, will prove relevant . . . such certainty is not required to undertake discovery." (*Id.* at 10, 11). Additionally, this Court rejected Gonzalez's arguments that reviewing the calls would be an "undue" burden and that his calls were subject to attorney-client privilege. (*Id.* at. 11-12). That same day, Defendants notified IDOC to produce the responsive calls, but IDOC did not produce the 84 responsive calls ("produced calls") until December 14, 2023. Upon review, these calls included conversations in Spanish and Defendants thereafter worked diligently to coordinate bilingual reviewers to review the calls.

Defendants' review revealed that in approximately 74% of the calls, Gonzalez frequently discussed his criminal case, his claims of innocence, the events of May 24 and May 25, 1990, Defendant Guevara, his criminal defense attorney, key witnesses to his criminal case, his day-to-day life in IDOC, his families' lives, and/or his claimed damages. Given that these topics are relevant to Gonzalez's claims, Defendants' defenses, and/or the credibility of Gonzalez and key witnesses, Defendants noted their intention to subpoena additional calls in the January 31, 2024, joint status report. (Dkt. 146).

**2. Parties' Discussions and 37.2 Efforts to Avoid Motion Practice.**

Defendants sent a detailed 37.2 letter setting forth the basis for their request for additional calls. (*See* Ex. 2, Defs. 37.2 Letter). In response, Gonzalez requested that Defendants identify specific calls identified in the letter. (*See* Ex. 6, 2/20/24 Email Chain, at 2). The next day, to facilitate negotiations, Defendants identified three examples of calls with Jacque Rivera, Maria Gonzalez, and Maria Rivera. (*Id.*). Defendants transcribed two of the calls and produced those transcripts to Gonzalez on February 22. (*See* Ex. 7, 2/22/24 Email Chain).[5]

---

[5] Defendants tendered recently received additional transcripts to Gonzalez on April 1, 2024, and April 4, 2024.

4

On February 23, 2024, the parties participated in a L.R. 37.2 videoconference and discussed Defendants' position that the calls are relevant and their intention to subpoena additional IDOC calls, to which Gonzalez objected. (*See* Ex. 8, 2/23/24 37.2 Email).

To facilitate the IDOC calls discovery and comply with the spirit of this Court's Order to allow for "plaintiff to understand which IDOC calls, if any, the defense deems relevant," (Dkt. 154) on February 27, 2024, Defendants identified 62 of the 84 produced calls they believed to be relevant to Gonzalez's claims, damages, and Defendants' defenses, (including witnesses' credibility) and asked that Gonzalez consider the list in determining whether he would agree to additional calls. (*See* Ex. 5, 2/27/24 Email & IDOC Call List).[6]

Afterwards, the parties engaged in another 37.2 videoconference, addressing Defendants' proposed subpoena to IDOC, which sought communications with 8 witnesses[7]–Jacque Rivera, Matt Sopron, Sean Starr, Melissa Segura, Maria Rivera, Maria Gonzalez, Alfredo Gonzalez, Jr., and Anita Lozada. (*See* Ex. 3, Defs. Supp. IDOC Subpoena). Defendants specifically inquired if Gonzalez had a counterproposal, such as specific timeframes or certain witnesses agreeable to Gonzalez. (*See* Ex. 9, 3/6/24 37.2 Email Chain). Gonzalez responded that it was Defendants' burden to prove the calls were relevant, refused to make any counterproposal, and Defendants served their subpoena on IDOC. (*See id.*). Gonzalez's motion followed.

---

[6] The parties disagree over whether Gonzalez's Second Requests for Admissions and corresponding Third Set of Interrogatories regarding the IDOC calls are proper and the adequacy of Defendants' responses to the same. This dispute is immaterial to the discovery dispute raised by Gonzalez's motion. Defendants tendered a list of relevant calls to Gonzalez and Gonzalez simply quarrels with the way it was tendered. (*See* Ex. 9, 3/6/24 37.2 Email Chain).

[7] For those witnesses with a large number of calls with Gonzalez, Defendants additionally limited their request by time frame to calls made from 2014-2020. (*See* Ex.3, Defs. Supp. IDOC Subpoena).

5

## ARGUMENT

Pursuant to Rule 26, parties may seek discovery "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information sought "need not be admissible in evidence to be discoverable." *Id.* In other words, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For purposes of discovery, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. at 351. That is because the function of discovery is to uncover the truth. *Shapo v. Engle*, 2001 WL 629303, * 2 (N.D. Ill. May 25, 2001).

"The scope of material that may be secured by Subpoena is as broad as that permitted under the discovery rules." *Coleman v. City of Peoria*, 2016 WL 3974005, * 3 (C.D. Ill. July 22, 2016) (citations omitted). A court may quash or modify a subpoena issued to a third party if it requires disclosure of privileged or other protected matter – if no exception or waiver applies – or subjects the subpoenaed party to undue burden. Fed. R. Civ. P. 45(c)(3)(A). The party moving to quash bears the burden of showing that the subpoena falls into one of these categories. *Coleman*, 2016 WL 3974005, * 3; *see also Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. Mar. 18, 2002) (the party opposing discovery bears burden of showing it is not relevant by "specifically detail[ing] the reasons why each [request] is irrelevant . . ." (quoting *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990)).

In determining whether to quash a third-party subpoena based on a party's privacy

interests, courts are to weigh the relevance of the information sought with the strength of the privacy interest. (Dkt. 140, at 10) (citations omitted); *see also Pursley v. City of Rockford*, 2020 WL 1433827, *2 (N.D. Ill., Dec. 10, 2020). [8]

## I. The Highly Relevant Nature of Gonzalez's IDOC Calls Outweighs Gonzalez's Minimal Privacy Interest.

Gonzalez argues that "Defendants have failed to show the relevance of the discovery sought," or a need for the recordings that would "outweigh the substantial burden on Plaintiff's privacy interest and the cost such a subpoena would impose." (Mtn., Dkt. 157, at 6-7). But it is ***Gonzalez's*** burden–not Defendants–to show that the discovery sought is irrelevant or that his *minimal* privacy interests outweigh the relevance of the discovery. (Dkt. 140, at 9-10); *Coleman*, 2016 WL 3974005, * 3. Gonzalez's conclusory allegations on which his motion relies patently fail to meet this burden.

### a. Defendants request for 8 witnesses is reasonably tailored.

As noted above, Defendants dramatically narrowed their request to communications with 8 witnesses–Jacque Rivera, Matt Sopron, Sean Starr, Melissa Segura, Maria Rivera, Maria Gonzalez, Alfredo Gonzalez, Jr., and Anita Lozada–a total of 1,738 calls.

The majority of these calls are with Gonzalez's family members whom he disclosed as witnesses who will testify at trial in this case: 537 calls with Maria Rivera, 791 calls with Maria Gonzalez, 173 calls with Alfredo Gonzalez, Jr., and 174 calls with Anita Lozada. The remainder

---

[8] Defendants acknowledge that this Court, and others, have found that Section 1983 plaintiffs have a *minimal* privacy interest in recorded prison calls. (Dkt. 140, at 9-10); *see also Pursley*, 2020 WL 1433827, * 2 (finding minimal privacy interest necessary for standing); *Coleman*, 2016 WL 3974005, * 3. Defendants thus, do not address it again here. Inmate written communications are monitored similarly to phone calls and the same privacy standard should apply. *See* https://idoc.illinois.gov/communityresources/electronicmessagingservices.html.

of the calls include: 58 calls with Jacque Rivera, 2 calls with Matt Sopron, 2 calls with Sean Starr, and 1 call with Melissa Segura. These calls, at *maximum*, are 30 minutes in length. This is a far cry from the picture Gonzalez attempts to paint by claiming Defendants seek 3,077 calls and "thousands of hours" of Gonzalez's private calls. Indeed, the total length of the requested calls is under 750 hours.

The four family member witnesses are individuals Gonzalez has a close relationship with and were disclosed by him as having knowledge of his "wrongful prosecution, conviction and incarceration," and his alleged damages–Anita Lozada (Gonzalez's alibi witness whom he raised as his daughter), Alfredo Gonzalez, Jr. and Maria Gonzalez (Gonzalez's son and daughter), and Maria Rivera (aka Maria Perez, Gonzalez's former partner, mother of his children, and alibi witness). (*See* Ex. 10, Gonzalez 26(a) Discl.). Lozada, Alfredo Gonzalez Jr., and Maria Rivera each signed sworn affidavits that were produced in this case, were utilized in Gonzalez's post-conviction proceedings, and are being utilized by Gonzalez to support his claim of innocence here. (*See* Ex. 11, Affidavits). At the time of the Wiley brother murders, Gonzalez lived with Lozada, Alfredo Gonzalez, Jr., Maria Gonzalez and Maria Rivera. And while Lozada and Maria Rivera now claim that Gonzalez was home at the time the Wiley brothers were killed, this alibi testimony **never** surfaced in Gonzalez's underlying criminal trial. It was not until 2018–*over 25 years after* Gonzalez's conviction–that this evidence first came to light in Gonzalez's post-conviction proceedings. (*See* Ex. 11, Affidavits). In addition, based on the produced calls with Maria Gonzalez, it appears she was actively involved in Gonzalez's post-conviction efforts.

Moreover, it is likely that Gonzalez also discussed his underlying criminal prosecution and post-conviction efforts with the remaining four witnesses. Jacque Rivera and Matt Sopron[9]

---

[9] There were no calls with Matt Sopron captured by Defendants' original IDOC subpoena.

8

were/are also plaintiffs in federal civil rights lawsuits alleging wrongful conviction against Chicago police detectives and the City of Chicago represented by the same attorneys as Gonzalez (Loevy & Loevy). *See Rivera v. Guevara*, 12 CV 4428; *Sopron v. Cassidy*, 19 CV 8254. Even though these individuals were not disclosed in Gonzalez's 26(a) disclosures, in ***100%*** of Gonzalez's calls with Jacque Rivera, Gonzalez discusses his criminal case, Defendant Guevara, other individuals who have alleged misconduct against Defendant Guevara (including current plaintiffs with pending lawsuits represented by Loevy & Loevy), his attempts to overturn his conviction, his criminal defense attorney, and the underlying investigation, which are relevant to his current claims against Defendants and what occurred in his criminal case. (*See e.g.* Ex.4, IDOC Call Trans. JGS_Gonzalez 1472-1517). Gonzalez's story of what happened on May 24 and 25, 1990, and during his subsequent arrest has evolved over time and Defendants are entitled to explore why. And as Gonzalez's connections with Matt Sopron are like those with Jacque Rivera, it is reasonable to assume that they discussed these very same topics.

The remaining two witnesses are (i) Gonzalez's attorney in this very lawsuit (Sean Starr); and (ii) a Buzzfeed reporter (Melissa Segura). At the risk of stating the obvious, it is reasonable to assume Gonzalez spoke about his case with his attorney. And Segura authored two articles in which she interviewed Gonzalez related to his allegations that Defendant Guevara framed him, and his damages, including fighting illness while incarcerated, and it is reasonable to assume their calls discussed these topics.[10]

The relevance of the prison call recordings and emails with these 8 witnesses cannot be seriously disputed; indeed, ***this Court has already found Gonzalez's IDOC calls to be relevant***.

---

[10] *See* https://www.buzzfeednews.com/article/melissasegura/guevara-chicago-murder-exoneration; https://www.buzzfeednews.com/article/melissasegura/many-inmates-fear-coronavirus-is-the-new-death-penalty.

(Dkt. 140, at 10-11); *see also, e.g.*, *Russell v. City of Chi.*, 2022 WL 294765, *3 (N.D. Ill. Feb. 1, 2022) (defendants entitled to phone calls with narrow set of key witnesses). And Gonzalez's produced calls with these witnesses only reinforce this Court's prior finding of relevance. Indeed, in Gonzalez's November 25, 2017, phone call with Jacque Rivera, they discuss how Gonzalez testified against himself, the harmful effect his testimony may have on his post-conviction efforts, that Gonzalez was told that "if you all help out each other, even you'll be able to go home," and Gonzalez's understanding that two key witnesses, Tino and Bello, were going to "change their stor[ies]." (*See* Ex. 4, IDOC Call Trans. JGS_Gonzalez 1472-1517, at 4:15-19, 8:8-14, 9:20-10:12, 20:18-19).

In yet another call, Gonzalez and Maria Gonzalez discuss a 10-page letter Gonzalez drafted that details "the shit [he] went through," and Maria asks if there is anything in the letter that "will help in any way or bring out more information in any way" and that she will get the letter translated from Spanish to English to see if it "will trigger more of a memory." (*See* Ex. 12, IDOC Call Trans. JGS_Gonzalez 1812-1830, at 7:15-11:5, 12:13-16). This letter was provided to alibi witness, Lozada, (*see id.*), but Lozada no longer possesses that letter. (*See* Ex. 13, Lozada Dep., at 71:2-24).

Similarly, Gonzalez discusses with Maria Rivera what he remembers about the day of the murders and the day he was arrested, including, importantly, actions that he recalled Maria Rivera–one of his alibi witnesses–taking. During this same call, Gonzalez talks to Rivera about writing Carmen (Gonzalez's sister who was allegedly at the police station the night of his arrest) a letter, to "try to get her to remember things." (*See* Ex. 14, IDOC Call Trans. JGS_Gonzalez 1716-1762, at 19:9-21:13). When Rivera responds to Gonzalez that Carmen "doesn't remember anything," Gonzalez explains,

> All [Carmen] has to say is that you were with her there, you took me food, you took me a change of clothes. And if they ask about the change of clothes, that supposedly the detective said it was cold – or she don't even have to say that. That the detective told her to take a change of clothes.

(*Id*.). Gonzalez also talks about how "that idiot's wife" Rosa [Bello]–who undercut Gonzalez's story that he had no idea Juan, Tino, and Goossens were going to shoot the Wiley brothers at his criminal trial–[11] "doesn't want to help me" but when she visited Juan, she would tell Gonzalez she wanted to "change the testimony." (*Id*. at 35:11-36:8).

All of this is to say, Defendants are not speculating that Gonzalez's recorded communications might contain relevant information[12]–there is concrete evidence from his produced calls with these witnesses that they contain highly relevant, if not critical information. This includes discussion of topics that are hotly contested in this litigation–including Gonzalez's recently disclosed alibi and the fact that Gonzalez's, Tino's and Bello's stories have all evolved in highly suspicious ways from the time of the criminal investigation to the present.

And given the significant impact these 8 additional witnesses have on the case, their respective relationships with Gonzalez, and the evidence that they are providing to support Gonzalez claims of innocence, not to mention the frequency with which they discuss relevant topics, Defendants' request for this narrower subset of calls is reasonably tailored to capture relevant conversations about Gonzalez's arrest and prosecution. (*See* Dkt. 140, at 10) ("The Court also finds that defendants' subpoena is reasonably targeted at conversations that are likely to contain relevant information"); *see also Russell,* 2022 WL 294765, at *3 (Russell's

---

[11] Bello testified that on the night of the murders, Gonzalez, Juan, Tino and Christopher Goossens were at her apartment, where Gonzalez retrieved a black handgun Juan was storing in the bedroom.

[12] Gonzalez would have this Court severely restrict the definition of "relevance" to only those calls in which Gonzalez admits to murdering Kevin and Torrence Wiley. (Mtn., Dkt. 157, at 3). However, there is no basis in the law to define relevance so narrowly. *See* Fed. R. Civ. P. 26(b)(1).

11

identification of individuals as witnesses who have knowledge of his claims and defenses, coupled with his admissions to speaking with them during his incarceration weighed in favor of disclosure).

      **b.**      **Gonzalez has minimal privacy interests in his recorded prison calls.**

Gonzalez boldly asserts (again) that Defendants' subpoena "unduly invades" his privacy interests because the calls were his "primary means of maintaining connection with his loved ones over his 30+ years in prison." (Mtn., Dkt. 157, at 7-8.)

But in the present context, and in direct contradiction to Gonzalez's claims, this Court has already held Gonzalez's privacy interests are *minimal* given that he knew–or should have known–his calls were monitored and recorded. (Dkt. 140, at 9-10). To the extent Gonzalez seeks to have this Court reconsider its previous findings, such a request is improper. *Williams v. Edgeton*, 1995 WL 242337, *2 (7th Cir. 1995) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments . . .")

Even so, Gonzalez's rehashed privacy arguments remain unpersuasive. Gonzalez decries that he had no other option to communicate with friends and family and thus he spoke with his family about their daily lives frequently over recorded lines. (Mtn., Dkt. 157, at 9). But even these calls are extremely relevant to Gonzalez's damages. Gonzalez claims that because of his wrongful incarceration, his relationships with Maria Rivera, his children and the rest of his family were harmed when he "lost decades of time where he was not with his partner, and he missed out on the opportunity to raise his children." (Pltf. SAC, Dkt. 107, ¶ 170). So, while these calls surely address personal matters, Gonzalez injected these personal matters in this case based on his claimed damages. Thus, conversations with Maria Rivera, Alfredo Gonzalez, Jr., Maria Gonzalez, and Lozada are relevant to the scope of these claimed damages, particularly because

12

Gonzalez's damages evidence will most certainly rely on public testimony about all of these witnesses from the witnesses themselves, as well as Gonzalez. Gonzalez once more makes no specific showing in any form as to what significant or sensitive life events are at issue or when they occurred and why those events would not be relevant to his alleged damages. *See Velez v. City of Chi.*, 2021 WL 3231726, *4 (N.D. Ill., July 29, 2021) (rejecting bare assertions that inmates' calls were intimate and sensitive).

Further, while there will likely be irrelevant calls in the targeted net Defendants have cast– that does not serve as a basis to quash Defendants' subpoena–as this Court has already found. (Dkt. 140, at 10, 11) ("[D]efendants cannot establish with certainty which of these calls, if any, will prove relevant, but such certainty is not required to undertake discovery."); *see also Velez*, 2021 WL 3231726, * 2 (". . . But the indisputable reality as common-sense dictates is that one can't know which specific items sought will turn out to be significant until they all are produced and reviewed." (citations omitted)).

The simple fact remains that there are relevant calls Defendants are entitled to discover, *supra* at 7-12, and they have already significantly narrowed the request well beyond what was required considering the relevancy of a majority of Gonzalez's current IDOC calls. *(Id.)* The probative value of these calls significantly outweighs Gonzalez's minimal privacy interests and Gonzalez's Motion to Quash should be denied.

**II.     Gonzalez Cannot Show Defendants' Subpoena Creates an Undue Burden.**

In addition to claiming infringement of his privacy rights, Gonzalez argues that Defendants' subpoena would result in a "massive cost on the parties in reviewing and cataloguing the recordings." (Mtn., Dkt. 157, at 12.) This argument is hyperbole and is no occasion to deny Defendants this discovery.

Defendants are not seeking unlimited access to Gonzalez's calls–they have already proposed a targeted subset of calls with 8 specific witnesses who are likely to have relevant information considering facts uncovered in discovery. Out of the thousands of calls Gonzalez made, Defendants sought only those calls with witnesses in which he regularly discusses his case and his damages.

Moreover, Gonzalez has a dramatic advantage in reviewing the calls because they are *his* own calls, and he can assist his counsel in identifying relevant information contained within those calls. *See Williams v. City of Chi., et al.*, 17-cv-5186, Dkt 352, at 1 (N.D Ill. Apr. 8, 2021) (attached as Ex. 15) (denying plaintiff's motion to exclude 3000 disclosed calls, and noting plaintiff can assist his attorney to decipher the calls). If he chooses to listen to the calls, the small burden and expense it would take for Gonzalez to review them pales in comparison to the over 1-million pages of documents Gonzalez has produced in this matter and the tens of millions of dollars he seeks as damages in this case.

Gonzalez also seems to ignore the fact that he has no reason to listen to the calls *at all* if he is so confident in their lack of relevance. If Gonzalez did not make admissions on the calls, he has nothing to be concerned about and can simply rely on Defendants' identification of relevant calls. The most relevant calls will be transcribed and produced, at which time Gonzalez's representatives–and they certainly need not be lawyers–can listen to those specific calls to ensure accurate transcriptions, and any disputes about the use of those calls in these proceedings can be addressed with the Court. As such, Gonzalez will have plenty of time to contest the admissibility or other use of the calls, and there is no logical reason his representatives would need to listen to other calls. While Gonzalez rails on about the hypothetical burden of review, he never states that his representatives actually intend to review the calls. Accordingly, Gonzalez's burden argument

does not justify quashing the Supplemental IDOC Subpoena and denying Defendants access to this relevant evidence.

### III.   Attorney-Client Privilege Does Not Apply to Monitored and Recorded Calls.

In a last-ditch effort to quash Defendants' subpoena, Gonzalez argues, without citation to any authority, that Defendants' request for Gonzalez's two phone calls with attorney Sean Starr "improperly invades attorney-client privilege." (Mtn., Dkt. 157, at 9-10.)

But this Court has already ruled that the attorney-client privilege does not apply to Gonzalez's recorded IDOC calls. (Dkt. 140, at 11). And Gonzalez's thinly veiled motion to reconsider prior arguments is not proper, *see Tatum v. Lucas*, 2021 WL 824340, *2 (E.D. Wisc. Mar. 4, 2021) (reconsideration improper where plaintiff simply sought to reargue merits of underlying motion.), and any new arguments Gonzalez attempts to raise in support of this claim are waived. *United States v. Acrey*, 2014 WL 12838509, *2 (N.D. Ill. Sep. 5, 2014) (". . . Defendant's motion is an improper motion for reconsideration. In essence, [d]efendant is asking the [c]ourt to reconsider its prior ruling based on a legal argument that was available to him when he filed his initial motion and that he failed to make.") Not to mention it is settled law that the attorney-client privilege ***does not apply*** to monitored and recorded calls made while incarcerated. *See e.g. Pursley*, 2020 WL 1433827, *4; *Russell*, 2022 WL 294765, *3 at n. 2; *Prince v. Kato*, 2020 WL 7698373, *3 (N.D. Ill. Dec. 28, 2020); *Velez*, 2021 WL 3231726, *3-4.

As a result, just as this Court held before, this objection also fails to establish a legitimate justification for quashing Defendants' Supplemental IDOC Subpoena.

## CONCLUSION

For the reasons herein, Defendants respectfully request that this Court deny Gonzalez's Motion to Quash.

Dated:  April 4, 2024						Respectfully submitted,

							/s/*Allison L. Romelfanger*
							Allison L. Romelfanger, Atty. No. 6310033
							*Special Assistant Corporation Counsel for*
							*Defendants Mingey, Epplen, Montilla, Paulnitsky,*
							*Schak, Yanow, & Gawrys*

James G. Sotos
David A. Brueggen
Josh M. Engquist
Allison L. Romelfanger
Kyle T. Christie
Elizabeth R. Fleming
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
(630) 735-3300
aromelfanger@jsotoslaw.com

16

### CERTIFICATE OF SERVICE

I, Allison L. Romelfanger, an attorney, certify under penalty of perjury, pursuant to 28 U.S.C.A. § 1746, that on **Thursday, April 4, 2024**, I electronically filed the foregoing **Defendants' Response to Plaintiff's Motion to Quash Their Supplemental IDOC Subpoena** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list.

*Attorneys for Plaintiff Alfredo Gonzalez:*

Sean Starr
Anand Swaminathan
Steve Art
Loevy & Loevy
311 N. Aberdeen St. 3rd Fl.
Chicago, IL 60607
312-243-5900
sean@loevy.com
anand@loevy.com
steve@loevy.com

*Attorneys for Defendant Reynaldo Guevara:*

Thomas More Leinenweber
Megan K. McGrath
Leinenweber, Baroni & Daffada, LLC
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
312-606-8705
thomas@ilesq.com
mkm@ilesq.com

*Attorneys for Defendants Jennifer Borowitz and Frank DiFranco:*

James Matthias Lydon
Michael Charles Stephenson
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3561
jlydon@hinshawlaw.com
mstephenson@hinshawlaw.com

Michael F Iasparro
Hinshaw & Culbertson
100 Park Avenue
Rockford, IL 61105
815-490-4945
miasparro@hinshawlaw.com

*Attorney for Defendant John Perkaus:*

James Matthias Lydon
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3561
jlydon@hinshawlaw.com

*Attorneys for Defendant City of Chicago:*

Eileen Ellen Rosen
Austin Gordon Rahe
Catherine Macneil Barber
Lauren M. Ferrise
Theresa Berousek Carney
Rock, Fusco & Connelly
333 West Wacker Drive
Ste 19th Floor
Chicago, IL 60606
312-494-1000
erosen@rfclaw.com
arahe@rfclaw.com
cbarber@rfclaw.com
lferrise@rfclaw.com
tcarney@rfclaw.com

***Attorneys for Defendant Cook County:***

David Alan Adelman
Elizabeth Francine Brogan
Joseph Anthony Hodal
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
312-603-3151
david.adelman@cookcountyil.gov
elizabeth.brogan@cookcountyil.gov
joseph.hodal@cookcountyil.gov

/s/ *Allison L. Romelfanger*
Allison L. Romelfanger